IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **LOUISIANA ENVIRONMENTAL ACTION NETWORK** | * | **CIVIL ACTION NO. 07-0595** |
| | * | **JUDGE JAMES** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE HAYES** |
| **LWC MANAGEMENT CO., INC., LOUISIANA LAND & WATER CO., INC., UDS MANAGEMENT CORP., AND JEFFREY PRUETT** | | |

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss filed by Defendants LWC Management Co., Inc., Louisiana Land & Water Co., Inc., UDS Management Corp., and Jeffrey Pruett ("Defendants") pursuant to F.R.C.P. Rule 12 (Document No.15). The motion is opposed, and oral argument was held on the motion on August 6, 2006. For reasons stated below, it is recommended that the motion be **DENIED.**

BACKGROUND

On March 30, 2007, Plaintiff Louisiana Environmental Action Network ("LEAN") filed this citizen suit under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq*., alleging that Defendants, owners of five wastewater treatment facilities located in northeast Louisiana, have been discharging pollutants into Louisiana waterways in excess of the amounts permitted by their permits and that certain of these facilities have been operating without valid permits for a period of years. LEAN seeks, *inter alia*, injunctive relief and civil penalties as a result of these alleged violations.

Over the past four years, Louisiana state regulatory agencies have been involved in efforts to bring the five wastewater treatment facilities at issue into environmental compliance.

1

According to Defendants, LDEQ has performed numerous enforcement inspections at the wastewater treatment system sites and has taken specific enforcement actions, including the issuance of enforcement letters, compliance orders, and notices of potential penalties. Defendants, however, do not agree with some of the allegations regarding the enforcement actions and thus have made requests for adjudicatory hearings on the issue. These requests have been stayed while the Louisiana Department of Environmental Quality ("LDEQ") and Defendants pursue informal dispute resolution.

On June 12, 2007, Defendants filed the instant motion to dismiss based on the following grounds: (1) lack of standing; (2) mootness; (3) untimeliness; (4) equitable estoppel; and (5) *Burford* abstention. In the alternative, Defendants ask the Court to stay these proceedings based on the doctrine of primary jurisdiction.

## LAW AND ANALYSIS

*A. The Clean Water Act*

"Congress passed the Federal Water Pollution Control Act Amendments [the CWA] in 1972 with the stated purpose of restoring and maintaining the integrity of the nation's waters." *Carr v. Alta Verde Industries*, 931 F.2d 1055, 1058 (5th Cir. 1991) (citing 33 U.S.C. § 1251(a)). "To achieve this goal, the Act requires the strict enforcement of certain technology-based effluent limitations." *Id*. "As the primary means for enforcing these effluent limitations, Congress established the NPDES permit system." *Id*. "In order for any person lawfully to discharge any pollutant from a point source into navigable waters of the United States, that person must obtain an NPDES permit and comply with its terms." *Id*. (citing 33 U.S.C. § 1311(a)). In Louisiana, the issuance of permits has been delegated to the Louisiana Department of Environmental Quality,

and the permits are termed Louisiana Pollutant Discharge Elimination System ("LPDES") permits.

### B. Rule 12(b)(1)[1]

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998 (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *cert. denied*, 534 U.S. 993 (2001). In fact, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984)).

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assics., M.D.'s, P.A.*, 104 F.3d 1256, 1260-1 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-9 (11th Cir. 1990); *see Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes

---

[1]Although Defendants cast their motion to dismiss based on lack of standing and mootness as one pursuant to Federal Rule of Civil Procedure 12(b)(6), standing is a component of federal subject matter jurisdiction. *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004) (citing *Allandale Neighborhood Ass'n v. Austin Transp. Study Policy Advisory Comm.*, 840 F.2d 258, 259-61 (5th Cir. 1988)); Center for Individual Freedom v. Carmouche, 449 F.3d 655, 659 (5th Cir. 2006). Thus, this Court will analyze Defendants' motion to dismiss for lack of standing according to the Rule 12(b)(1) standard.

3

of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (5th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert. denied*, 449 U.S. 953 (1980)) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.*

### 1. Standing

Defendants assert that LEAN has failed to allege sufficient facts to establish that the organization has standing to bring the current action.[2] The CWA allows a citizen to sue any individual who is ". . . alleged to be in violation of an effluent standard or limitation." *Lockett v. E.P.A.*, 319 F.3d 678, 683 (5th Cir. 2003) (citing 33 U.S.C. §1365(a)(1))). A "citizen" is defined as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). Thus, the ". . . CWA confers standing to the limits of the constitution," and a plaintiff need only demonstrate constitutional standing in order to assert a CWA cause of action. *Save Our Community v. U.S. E.P.A.*, 971 F.2d 1155, 1160 n.10,11 (5th Cir. 1992).

In order to establish constitutional standing, a plaintiff must show that (1) he or she has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant (injury in fact); (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision. *Id.* (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472

---

[2] Although Defendants do not definitively state whether they are making a facial or factual attack on this Court's subject matter jurisdiction, Defendants do state that the face of LEAN's complaint fails to allege standing; thus, this Court will assume Defendants are making a facial attack on subject matter jurisdiction.

(1982)). LEAN asserts standing on the basis of the interests of its members, none of whom are individual parties to this suit. Thus, LEAN must establish associational standing, which requires a showing that (1) LEAN's members would otherwise have [constitutional] standing to sue in their own right; (2) the interests LEAN seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Id.* at 1160. Defendants do not dispute that LEAN's interests are germane to its purpose or that the claims asserted or relief requested do not require the participation of individual members. Rather, Defendants argue that LEAN has failed sufficiently to allege that its members have standing to sue in their own right.

Injury in Fact

Defendants contend that LEAN has alleged merely a generalized grievance rather than a particular and concrete injury in fact. With regard to the injury in fact element of constitutional standing, the Supreme Court has held that ". . . harm to aesthetic, environmental, or recreational interests is sufficient to confer standing, provided that the party seeking review is among the injured." *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); see also *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club*, 405 U.S. at 735) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."). The Court has also held that ". . . these injuries need not be large, an 'identifiable trifle' will suffice." *Id.* at 1161 (quoting *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 71 (3rd Cir. 1990).

In the case at bar, LEAN's complaint alleges the following:

> LEAN has a particular interest in the preservation and restoration of water quality in the rivers and streams of Louisiana, and in the public health of its members.... In addition, LEAN's interest in water quality flows directly from the interests of its members, who live adjacent to or in close proximity to these facilities, and those who use the waters of Louisiana, including the streams of northeast Louisiana that receive the discharges from the Defendants' facilities, for recreation, subsistence fishing, aesthetic enjoyment and spiritual pursuits.  Water pollution and threats to water quality from these facilities directly harm the members of LEAN.  The members of LEAN are therefore damaged by the Defendants' repeated violations of their permits, which directly threaten their interests in water quality.

Complaint ¶ 1.  The undersigned finds *Save Our Community*, a CWA case in which the plaintiff sought to establish associational standing, persuasive on the issue of whether the above language in LEAN's complaint sufficiently alleges an injury in fact.  In that case, the Fifth Circuit observed the following:

> In its complaint, SOC defined its *raison d'etre* as "promoting the protection of the wetlands in and around their communities."  Further, SOC supported with affidavits the assertion that its members resided in the vicinity of or owned property near the wetlands on the Skyline Landfill, and enjoyed "the wildlife, aesthetics, open space, ecological and other values of the wetlands, ... and were directly and beneficially interested in the continued protection, preservation, and enhancement of these values."

*Id.*  The court found that the plaintiff had alleged facts sufficient to state an injury in fact, noting that '. . . other Courts have consistently recognized this low threshold for sufficiency of injury." *Id.* (citing *U.S. v. Metropolitan St. Louis Sewer District*, 883 F.2d 54, 56 (8th Cir. 1989) (conferring representative standing where two of the group's named members alleged that many of the 25,000 members had visited, crossed, and frequently observed the river, as well as periodically had used it for recreational purposes); *Sierra Club v. Simkins Industries, Inc*. 847 F.2d 1109, 1112 n.3 & 1113 (4th Cir. 1988) (finding injury to aesthetic and environmental interests sufficient where pollution would affect river along which a single group member hiked; *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 61 (2d Cir. 1985) (holding that

6

two affidavits testifying to the recreational use of the river and finding the pollution offensive to aesthetic values sufficient to demonstrate injury). Thus, given the similarity between the language in LEAN's complaint and that in *Save Our Community*, the undersigned finds that LEAN has alleged a sufficient injury in fact on the part of its members to satisfy the first element of constitutional standing. Although they object to what they term as LEAN's "group context for establishing standing," Defendants cite to no authority, nor is this Court aware of any, that would require LEAN to allege injury to specifically named individuals at this early stage of the proceeding. Thus, the undersigned finds that LEAN has alleged the requisite injury in fact, and it is recommended that Defendants' motion to dismiss on this ground be DENIED.

Fairly Traceable

In order to establish that ". . . an injury is "fairly traceable" to a defendant's pollutant discharge in a citizen suit under the CWA, a plaintiff is not required to '"show to a scientific certainty that defendants' effluent, and defendants' effluent alone, caused the precise harm suffered by the plaintiffs.'" *Save Our Community*, 971 F.2d at 1161 (quoting *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3rd Cir. 1990)). Rather, a plaintiff need only establish '". . . that a defendant has (1) discharged some pollutant in concentrations greater than that allowed by its permit (2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs.'" *Sierra Club*,

*Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 557 (5th Cir. 1996) (citing *Powell Duffryn*, 913 F.2d at 72).[3]

The allegations in LEAN's complaint clearly satisfy these three elements. LEAN alleges that (1) Defendants have discharged effluents in amounts excess to that allowed by their permits at five wastewater treatment facilities; (2) into waterways to which its members live adjacent or in close proximity and which are used by its members for recreation, aesthetic enjoyment, subsistence fishing; (3) that Defendants' excessive discharges pollute the respective waterways; and that (4) such pollution directly harms its members and directly threatens their interests in water quality. Thus, LEAN has alleged facts that, if proven, are sufficient to establish that its members' injuries are fairly traceable to Defendants' actions. It is recommended that Defendants' motion to dismiss on this ground be DENIED.

Redressability

Defendants argue that LEAN has failed to establish that a favorable decision in this case would redress the injuries allegedly sustained by its members. In order to meet the redressability requirement, LEAN must allege facts sufficient to demonstrate that its injuries are ". . . likely to be redressed by a favorable decision." *Save Our Community*, 971 F.2d at 1161. "The redressability factor focuses upon the connection between the plaintiff's injury and the judicial relief sought." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

---

[3]See also *Cedar Point Oil Co.*, 73 F.3d at 557 & 558 n.24 (noting that ". . . some 'waterways' covered by the CWA may be so large that plaintiffs should rightfully demonstrate a more specific geographic or other causative nexus in order to satisfy the 'fairly traceable' element of standing.").

LEAN seeks a permanent injunction compelling compliance with the CWA and the imposition of civil penalties. LEAN alleges that the Defendants continued to discharge effluents in amounts exceeding that required by their permits in violation of the CWA at the time of the filing of the instant suit; thus, injunctive relief would clearly redress the injuries suffered by LEAN's members by preventing any further pollution in excess of the amount allowed by Defendants' permits. *See Save Our Community*, 971 F.2d at 1161. The fact that LEAN alleges an ongoing violation of the CWA also gives the organization standing to seek civil penalties in that, "[t]o the extent that [civil penalties] encourage defendants to discontinue current violation and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct."[4] *Public Citizen v. American Elec. Power Co.*, 2006 WL 3813766. *6 (E.D.Tex. December 27, 2006) (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 186 (2000)).[5] Thus, the undersigned finds that LEAN has alleged sufficient facts to establish that a favorable decision would remedy the injuries of its members, and it is recommended that Defendants' motion to dismiss on this ground be DENIED.

---

[4] The Supreme Court has held that ". . . a plaintiff does not have standing to maintain a citizen suit for a civil penalties under 33 U.S.C. § 1365 for wholly past violations of the Act." Carr, 931 F.2d at 1061. Thus, "[i]n order to establish standing for a citizen suit, the plaintiff must 'make a good-faith allegation of continuous or intermittent violation.'" *Id.* (quoting *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66 (1987).

[5] Defendants argue that injunctive relief and civil penalties will not redress the alleged injuries because such remedies are already being properly addressed by the actions of the Louisiana regulatory agencies, apparently attempting to make a factual attack on this Court's subject matter jurisdiction as it pertains to the redressability factor of standing; however, it is undisputed in this case that the actions of the regulatory agencies to which Defendants refer are ongoing and that no final administrative sanction is in place. Speculation about future agency action cannot defeat LEAN's standing.

*2. Mootness*

Defendants also argue that the CWA violations alleged by LEAN had been corrected and/or had ceased by the time LEAN initiated this citizen suit. As support for this claim, Defendants allude to numerous facts which they contend render LEAN's claims moot. This Court would be permitted to consider these facts in that mootness is an element of subject matter jurisdiction, *Sierra Club v. Glickman*, 156 F.3d 606, 620 (5th Cir. 1998); however, Defendants do not cite to any evidence supporting these facts nor do they even demonstrate how these facts relate to LEAN's claims, much less how the facts indicate that such claims are moot. This Court is neither required nor inclined to speculate as to the basis for Defendants argument or to search the record for evidence supporting such argument. Thus, as there is no indication from the face of the complaint that LEAN's claims are moot, it is recommended that Defendants' motion to dismiss on such ground be DENIED.

*C. Rule 12(b)(6)*

When considering a motion to dismiss, the Court must accept as true the well-pleaded factual allegations in the complaint, and construe them in the light most favorable to the plaintiff. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3 198, 205 (5th Cir. 1994), *cert. denied,* 514 U.S. 1017 (1995). "Nevertheless, minimal requirements [of pleadings] are not tantamount to non-existent requirements. The threshold may be low, but it is real--and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation." *Gooley v. Mobile Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1998). Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a motion to

dismiss under Rule 12(b)(6). *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Statute of Limitations

Defendants argue that, on the face of the LEAN's complaint, many of the alleged violations are barred by the applicable five-year statute of limitations. Defendants do not, however, indicate which of LEAN's claims they believe are prescribed nor do they demonstrate how such claims are prescribed. Defendants stated in their opposition memorandum that they would adduce proof indicating that LEAN's claims were prescribed at the hearing held in this matter; however, Defendants did not do so. In addition, a review of the complaint does not demonstrate that it is facially prescribed. Accordingly, it is recommended that Defendants' motion to dismiss on this ground be DENIED.

Equitable Estoppel

Defendants also argue that LEAN's citizen suit is barred by equitable estoppel. Defendants assert that the Louisiana Department of Environmental Quality represented to them that their permits were valid during the time of the alleged violations and therefore that LEAN is equitably estopped from pursuing this citizen suit. However, not only do Defendants cite to no authority where the equitable estoppel doctrine has been applied to bar a suit based on the actions of a third party, but, more importantly, Defendants argument relies on matters outside of the face of the complaint. Thus, such argument is not cognizable in the context of a Rule 12(b)(6) motion, and it is recommended that Defendants' motion on this ground be DENIED.

Civil Penalties

Defendants argue that civil penalties are not appropriate in this case. The CWA, however, specifically authorizes courts to impose civil penalties for violation of effluent standards or limitations. *See* U.S.C. § 1365(a). Moreover, the facts Defendants rely upon in arguing that civil penalties are inappropriate do not appear on the face of LEAN's complaint and therefore are not properly considered in the context of this Rule 12(b)(6) motion. It is recommended that Defendants' motion to dismiss on this ground be DENIED.

### D. Primary Jurisdiction

Defendants argue that this Court should stay this case pursuant to the primary jurisdiction doctrine based on the ongoing efforts of Louisiana state administrative agencies to bring the five sewage treatment facilities into environmental compliance. The doctrine of primary jurisdiction applies "'whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Rogers v. Columbia/HCA of Central Louisiana, Inc.*, 961 F.Supp. 960, 966 (W.D.La. 1997 (citing *U.S. v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1956); *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 F.3d 1304, 1309 (5th Cir. 1995)). There are three elements that must be present in order for the primary jurisdiction doctrine to apply: (1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body. *Id.*

In the case *sub judice*, Defendants have not shown that the adjudication of LEAN's claims requires the resolution of predicate issues or the making of preliminary findings. In addition,

resolution of LEAN's claims would not require this Court to perform any function within the special competence of LDEQ such as writing a new permit for Defendants or to setting new effluent standards. See *Sierra Club v. El Paso Gold Mines, Inc.*, 198 F.Supp.2d 1265, 1271 (D.Colo. 2002) (*overruled on other grounds*)); *Student Public Interest Research Group of New Jersey Inc. v. Monsanto Company*, 600 F.Supp. 1479, 1483 (D.C.N.J. 1985) (finding that primary jurisdiction not applicable to a permit enforcement case in that comparing the allowable quantities of pollution permits to actual pollution statistics is no more complex than a court's typical work); *Illinois Pub. Interest Research Group v. PMC Inc*., 835 F.Supp. 1070, 1076 (N.D.Ill. 1993) (finding that the doctrine of primary jurisdiction is inapplicable to CWA enforcement actions). LEAN's primary claim is that Defendants are discharging effluents in excess of the amount authorized by their LPDES permits.[6] Therefore, in order to adjudicate LEAN's claims, this Court need only compare the amount of effluent discharge permitted by Defendants' permits with the amount actually discharged by Defendants. No special knowledge or expertise is necessary to make such a comparison. The LDEQ utilized its knowledge and expertise in setting the discharge limitations in Defendants' permit, and there is nothing to prevent this Court from determining if Defendants have abided by such limitations. As is stated in the legislative history of the CWA, "[a]n alleged violation of an effluent control limitation or standard would not require reanalysis of technological or other considerations at the enforcement

---

[6]LEAN does alleges that certain wastewater treatment facilities do not have a valid permit; however, LEAN also alleges that, even if a valid permit exists, the facilities' discharges are in excess of the amount allowed by such permit. Thus, the assertion that certain facilities lack a permit is not central to LEAN's claims.

13

stage. These matters will have been settled in the administrative procedure leading to the establishment of such effluent control provision." S. Rep. No. 92-414, 1971 WL 11307 at 3745.

Moreover, numerous courts have held that the doctrine of primary jurisdiction is inapplicable to environmental citizen suits under statutes such as the CWA. *St. Bernard Citizens for Environmental Quality, Inc. v. Chalmette Refining, L.L.C.*, 348 F.Supp.2d 765, 767-68 (E.D.La. 2004); see also *Sierra Club v. Tri-State Generation and Transmission Ass'n, Inc.*, 173 F.R.D. 275, 284 (D.Colo. 1997) (". . . [A]pplying t]he doctrine of primary jurisdiction to citizen suits would frustrate Congress's intent, as evidenced by its provision for citizen suits, to facilitate enforcement of environmental protection laws."); *Wilson v. Amoco Corp.*, 989 F.Supp. 1159, 1170 (D.Wyo. 1998 (finding the primary jurisdiction doctrine inapplicable to CWA citizen suits). Accordingly, the undersigned finds that the doctrine of primary jurisdiction is not applicable to this case, and it is recommended that Defendants' motion to dismiss on this ground be DENIED.

*E. Burford Abstention*

Defendants again rely the ongoing efforts of the LDEQ to bring the five wastewater treatment facilities at issue into environmental compliance in contending that this Court should abstain from exercising jurisdiction over the instant case based on the *Burford* abstention doctrine. "The *Burford* abstention doctrine stands as a narrow exception to the rule that federal courts 'have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" *Holden v. Connex-Metalna Management Consulting Co.*, 302 F.3d 358, 363 (5th Cir. 2002) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). As the Fifth Circuit has stated, ". . . the Burford doctrine requires . . . [the Court] . . . to 'weigh the federal interests in retaining jurisdiction over the dispute against the state's interests in independent action to

uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter.'" *Id.* (quoting *Webb v. B.C. Rogers Poulty, Inc.*, 174 F.3d 697, 700-01 (5th Cir. 1999). This balance, however, "'. . . only rarely favors abstention.'" *Webb*, 174 F.3d at 700 (quoting *Quackenbush*, 517 U.S. at 728). "Typically, 'federal courts have a virutally unflagging obligation ... to exercise the jurisdiction given them.'" *Id.* (citing *Colorado River Conservation Dist. v. U.S.*, 424 U.S. 800, 821 (1976).

> The *Burford* doctrine is as follows:
>
> > Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI")*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976)). Fifth Circuit *Burford* jurisprudence reveals five factors that are relevant in determining if abstention is appropriate: (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review. *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th cir. 1993).

With regard to the first factor, the only claim in this case is based on the alleged violations of the Clean Water Act; thus, this case "does not involve a state-law claim, nor even an assertion that the federal claims are 'in any way entangled in a skein of state-law that must be

untangled before the federal case can proceed.'" *NOPSI*, 491 U.S. at 361 (quoting *McNeese v. Board of Education for Community Unity School Dist. 187, Cahokia*, 373 U.S. 668, 674 (1963). There is also no indication that this Court would have to delve into unsettled issues of Louisiana state law in order to determine if Defendants violated their permits, although the Court will have to inquire into local facts to a certain extent. Moreover, although Louisiana certainly has an interest in bringing its sewage treatment facilities into environmental compliance, the undersigned fails to see how this Court's determination that Defendants did or did not discharge effluents in excess of their permits will prevent the state of Louisiana from establishing a coherent policy in this area. Defendants rely on the ongoing state regulatory efforts; however, "[w]hile Burford is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *NOPSI*, 491 U.S.at 364.

In addition, although the parties cite to no Fifth Circuit case addressing the application of *Burford* abstention to a CWA case nor is the undersigned aware of any such case, numerous courts in other jurisdictions have found that *Burford* abstention is inapplicable to citizen suits under the CWA. See *Community of Cambridge Environmental Health and Development Group v. City of Cambridge*, 115 F.Supp.2d 550, 560-61 (D.Md. 2000) (*Burford* abstention not applicable to citizen suits under the CWA); *Culbertson v. Coats American, Inc*., 913 F.Supp. 1572, 1578 (N.D.Ga. 1995) (finding that the CWA contemplates citizen suits as a supplement to state government action and therefore that *Burford* abstention is not appropriate); *Natural Resources Defense Council, Inc. v. Outboard Marine Corp*., 692 F.Supp. 801, 810 (N.D.Ill.

16

1998) (finding that *Burford* abstention is not applicable to federal permit enforcement action); *Student Public Interest Research Group of New Jersey, Inc. v. P.D. Oil & Chemical Storage, Inc.*, 627 F.Supp. 1074, 1085 (D.N.J. 1986) (declining to abstain based on the fact that Congress intended citizen suits to supplement state governmental action); *U.S. v. Cargill, Inc.*, 508 F.Supp. 734, 746 (D.C.Del. 1981) (finding *Burford* abstention inappropriate in light of the fact that, with the CWA, Congress ". . . enacted a pervasive federal system of regulation from which it has carved out an area for state regulation.").

In arguing that *Burford* abstention is appropriate in this case, Defendants rely on *Jamison v. Longview Power*, 2007 WL 1872830 (N.D.W.Va. June 27, 2007). In *Jameson*, the plaintiffs cast their suit as one based on the CWA, asserting that the defendant lacked a valid permit. *Id.* at *1. The court, however, found that the plaintiffs' claim was in fact a collateral attack on the state agency's permitting decision and therefore chose to abstain because permitting decisions were a component of state's efforts to establish a coherent policy on a matter a public concern. *Id.* at *5. In the case at bar, LEAN is not challenging a permitting decision of the LDEQ; rather, LEAN is asserting that the permitting decisions previously made by the LDEQ are not being enforced. Thus, the circumstances that counseled abstention in *Jameson* are not present in this case. Accordingly, the undersigned finds that *Burford* abstention is not appropriate in the case at bar and recommends that Defendants motion to dismiss on such ground be DENIED.

## CONCLUSION

For the foregoing reasons, it is recommended that Defendants' Motion to Dismiss be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of August, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE