UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK | CIVIL ACTION NO. 07-0595 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LWC MANAGEMENT CO. INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Louisiana Environmental Action Network against Defendants LWC Management Company, Inc. ("LWC") and Louisiana Land & Water Company ("LLWC") [Doc. No. 21]. Plaintiff moves for summary judgment as to Defendants' liability under the Clean Water Act, 33 U.S.C. § 1251, et seq. ("CWA"), for discharging pollutants without a valid permit.[1] Defendants respond that they operated pursuant to a valid permit, and, in the alternative, the Louisiana Department of Environmental Quality ("LDEQ") is estopped from asserting that their permit expired. [Doc. No. 26].

For the following reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED.

I.  FACTS AND PROCEDURAL HISTORY

Defendants operate the Tanglewood Sewage Facility ("Facility") for Tanglewood Estates subdivision in Monroe, Louisiana. The Facility is required to have a Louisiana Pollution Discharge Elimination System ("LPDES") permit to discharge pollutants into the surrounding waters.

On June 21, 1999, the LDEQ issued a five-year LPDES permit ("Permit") to the Facility with

---

[1] Plaintiff reserves the civil penalty, or damages, phase of this case for trial.

an effective date of July 1, 1999, and an expiration date of June 30, 2004. [Doc. No. 21, Exh. 7, p. 4].[2] To obtain an extension of the Permit pending renewal, Defendants were required to submit a renewal application 180 days before the Permit expired or January 9, 2004.

On May 12, 2004, the LDEQ notified Defendants by letter that the Permit would expire on June 30, 2004, and provided instructions for filing a renewal application. [Doc. No. 26, Exh. 1]. The letter provided in pertinent part that "[o]nly those permittees meeting the 180 day deadline have their permits automatically administratively continued. All other permittees must submit a request for and receive approval to submit their application after the deadline in order to have their permit administratively continued." [Doc. No. 26, Exh. 1].

On May 17, 2004, LWC filed a renewal application. [Doc. No. 21, Exh. 5, p. 1].[3]

On June 8, 2004, the LDEQ sent Defendants a letter stating that the application was "complete." [Doc. No. 21, Exh. 8].

Since July 1, 2004, the Facility has discharged pollutants, measured by the monthly average of total suspended solids ("TSS") and biochemical oxygen demand ("BOD"), into the surrounding waters. [Doc. No. 21, Exh. 1, p. 4]. This has resulted in 889 days of discharging pollutants.[4] [Doc. No. 21, Exh. 1, p. 4].

On February 27, 2007, the LDEQ issued a Compliance Order against Defendants stating that there was no valid permit for the Facility, and LWC did not have a permit to discharge waste into

---

[2]The Permit was issued to then-operator, Bayou Utilities, Inc.

[3]LLWC submitted a supplemental renewal application on April 19, 2006. [Doc. No. 21, Exh. 6, p. 1].

[4]Defendants failed to controvert these material facts, which are supported by competent summary judgment evidence.

the surrounding waters. [Doc. No. 21, Exh. 9, p. 3].

On March 30, 2007, Plaintiff, an environmental organization, filed a citizen suit against Defendants. [Doc. No. 1].

On July 13, 2007, Plaintiff filed a Partial Motion for Summary Judgment. [Doc. No. 21].

On July 30, 2007, Defendants filed a memorandum in opposition. [Doc. No. 26].

On August 13, 2007, Plaintiff filed a Reply. [Doc. No. 33].

## II.   LAW AND ANALYSIS

This only issue before the Court is whether Defendants operated without a valid permit during the relevant period.

### A.   Legal Framework

Under the CWA, it is unlawful to discharge pollutants into the waters of the United States except pursuant to a valid permit. See 33 U.S.C. §§ 1311(a), 1342(a)-(b). A facility is strictly liable for each day that it discharges pollutants without a permit. See Sierra Club Lone Star Chapter v. Cedar Point Oil Co., Inc., 73 F.3d 546, 573-74 (5th Cir. 1996); see also 33 U.S.C. § 1319(d); La. Rev. Stat. § 30:2025(E)(1)(a).

The LDEQ is authorized by the Environmental Protection Agency to issue a LPDES permit, which allows a facility to lawfully discharge pollutants under the CWA. See La. Admin. Code tit. 33.IX, § 2301 (2005). A LPDES permit expires after five (5) years. See La. Admin. Code tit. 33.IX, § 301(H)(1). "If the permittee wishes to continue an activity regulated by [a] permit after the expiration date of [a] permit, the permittee must apply for and obtain a new permit." La. Admin. Code tit. 33.IX, § 2701(B).

However, if the permittee timely submits a complete application to renew the permit, the

permit will remain effective and enforceable until the permitting authority decides whether to accept or reject the application. See La. Admin. Code tit. 33.IX, § 2321. In order for an application to successfully extend the effective period of an expiring permit, it must be both complete and either (1) submitted 180 days before the original permit expires, or (2) the permittee must receive permission from the permitting authority to submit a late application. See La. Admin. Code tit. 33.IX, § 2501(D)(2)-(E).

**B.     Motion for Summary Judgment**

Plaintiff contends that Defendants' renewal application did not extend the Permit.

Because Defendants filed a renewal application outside the 180-day deadline, Plaintiff argues that Defendants were required to obtain the LDEQ's permission to file an untimely application. Plaintiff argues that the LDEQ's determination that Defendants' application was "complete" does not constitute permission to file a late renewal application. Instead, a complete and timely application are required to extend a permit beyond the expiration date. See La. Admin. Code tit. 33.IX, § 2321 (requiring a "timely application under. . . § 2501 which is a complete (under. . . § 2501.E) application for a new permit"); see also La. Rev. Stat. § 49.961.B (requiring a "timely and sufficient application").

Defendants respond that the Permit was extended because they received permission from the LDEQ to file a late renewal application. Defendants contend that the June 8, 2004 LDEQ letter, which stated that their 2004 application "has been determined to be administratively complete," constitutes tacit approval for filing a late application. [Doc. No. 26, Exh. 2]. Therefore, the LDEQ "administratively continued" the Permit to the present date.

In the alternative, Defendants claim that the "LDEQ is estopped from denying that the 1999

4

Water Discharge Permit" expired. [Doc. No. 26, p. 8]. In addition to accepting their application, Defendants argue that the LDEQ continued to treat the Permit as valid. For example, the LDEQ continued to accept Defendants' monthly Discharge Monitoring Reports ("DMR") and proof of financial security, which are only required to be filed for an existing permit. Therefore, Defendants argue that they justifiably and detrimentally relied on the LDEQ's letter and actions indicating that the Permit was still valid.

The Court finds that Defendants' renewal application did not extend the effectiveness of the Permit and, therefore, the Permit expired on June 30, 2004. An expired permit is extended if the permittee submits a timely and complete renewal application; these requirements are clearly stated in the conjunctive. See La. Admin. Code tit. 33.IX, § 2501(D)(2)-(E). Therefore, the LDEQ's determination that Defendants' application was "complete" does not constitute approval to submit an untimely renewal application. Defendants have offered no other evidence that they specifically requested or received approval from the LDEQ. Whether explicit approval is necessary is an issue of first impression; however, the Court concludes that it is required because only renewal applications submitted within the 180-day deadline are automatically extended. See [Doc. No. 26, Exh. 1]; see also La. Admin. Code tit. 33.IX, § 2501.D.2.

Defendants' alternative estoppel argument is also unavailing. To assert an estoppel defense, Defendants must show inter alia that they reasonably and detrimentally relied on the representations of an adverse party. See United States v. Marine Shale Processors, 81 F.3d 1329, 1348 (5th Cir. 1996) ("[E]quitable estoppel responds to the unfairness inherent in denying the claimant some benefit after it has reasonably relied on the misrepresentations of the adverse party."). Defendants cannot estop Plaintiff because the LDEQ is not an adverse party to this action, and the Court has not

5

relied on the LDEQ's claim in an unrelated proceeding that the Permit expired. See id. (In a case where the LDEQ was joined as a party, the defendant relied on the LDEQ's (incorrect) statement that defendant had "interim status." In response, the Fifth Circuit noted that the LDEQ's letter "may have been no defense had the issue of interim status arisen in a citizen suit.").

Even if Defendants were permitted to assert an estoppel defense, Defendants' reliance was unreasonable as that term is used in the estoppel doctrine. "[C]itizens dealing with the government. . . are presumed to know the law." Id. at 1349 (citing references omitted). As previously stated, Defendants were specifically informed by the LDEQ that approval to file an application outside the 180-day deadline is required, consistent with the plain language of the applicable statute. See [Doc. No. 26, Exh. 1]; see also La. Admin. Code tit. 33.IX, § 2501.D.2. Therefore, the Court finds that it was unreasonable for Defendants to assume that they obtained approval in the absence of a LDEQ communication that their Permit had been extended. See Marine Shale Processors, 81 F.3d at 1350 (relying on the plain language of the statute to show that the defendant's reliance was unreasonable).[5]

Because the Court has determined that Defendants operated without a valid permit since June 30, 2004, they are liable for 889 days of discharging pollutants in violation of the CWA. However, the Court is not wholly unsympathetic to Defendants' situation and can consider Defendants' reliance, however misplaced, as a mitigating factor at the civil penalty phase. See id. at 1349, n. 11 ("The district court followed the proper course of action by refusing to estop the government and by considering the LDEQ letter as a mitigating factor in its penalty calculations.") (citing references

---

[5]Additionally, Defendants' argument that proof of financial security is only required for valid and effective permits is an incorrect statement of law. The LDEQ's requirement of financial security applies to both new and renewal applications. See La. Admin. Code tit. 33.IX, § 6701; see also [Doc. No. 26, p. 7].

6

omitted); see also 33. U.S.C. § 1319(d) (The district court may consider inter alia the defendant's "good faith efforts to comply with applicable requirements" in assessing the amount of the civil penalty.).

### III.     CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment [Doc. No. 21] filed by Plaintiff Louisiana Environmental Action Network is GRANTED.  Judgment is entered in favor of Plaintiff and against Defendants LWC Management Company, Inc. and Louisiana Land & Water Company for 889 days of discharging pollutants in violation of the Clean Water Act, 33 U.S.C. § 1251, et seq.

MONROE, LOUISIANA, this 21st day of August, 2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE