# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK | CIVIL ACTION NO. 07-0595 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LWC MANAGEMENT CO. INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

On March 30, 2007, Plaintiff Louisiana Environmental Action Network filed a citizen suit under the Clean Water Act, 33 U.S.C. § 1365(a), alleging that Defendants, LWC Management Co., Inc. ("LWC"); Louisiana Land & Water Co., Inc. ("Louisiana Land & Water"); UDS Management Corp.; Bayou Utilities, Inc.; Utility Data Service Corp.; and Jeffery Pruett, as owners and operators of five wastewater treatment facilities, violated their Louisiana Pollutant Discharge Elimination System ("LPDES") permits. Defendants responded that they should not be penalized for permit violations because they spent more than $2.4 million dollars improving the wastewater treatment facilities. Plaintiff, in turn, requested discovery relevant to these allegations. After a hearing on Plaintiff's motion to compel, Magistrate Judge Karen L. Hayes ordered Defendants to respond to Plaintiff's discovery requests. Defendants failed to comply. Plaintiff now moves the Court for an order preventing Defendants from presenting evidence related to this defense as an appropriate sanction under Federal Rule of Civil Procedure 37(b)(2) and (c).

For the following reasons, Plaintiff's Motion in Limine for Evidentiary Sanctions [Doc. No. 86] is GRANTED.

## I.    FACTS AND PROCEDURAL HISTORY

Early in this litigation, Defendants submitted a demonstrative exhibit ("List of

Improvements") to the Court allegedly breaking down how much of the alleged $2.4 million

dollars they had spent on improvements for each facility and further itemizing on what projects

the money was spent.  For example, there are approximately twenty projects listed for the Love

Estates Sewer System with total expenditures of $944,418.37.  These twenty projects range in

cost from $228,450.00 (installation of a pretreatment aerator plant) to $1,820.25 (rebuilding of

sewer pump assemblies).  Each of the projects listed in the exhibit is associated with an "Order

No."

On November 19, 2007, and December 19, 2007, Plaintiff served discovery requests on

Defendants, seeking, among other things, information and documentation supporting the alleged

improvements.  In the first set of discovery requests, Plaintiff also asked Defendants to identify

bank accounts used in operation of the facilities and asked for all documents related to those

bank accounts.  In the second set of discovery requests, Plaintiff requested the date of completion

of each project in the List of Improvements and asked Defendants to "[p]roduce all invoices,

receipts, and other documents that directly support each amount and description of each 'Order

No.' [identified in the List of Improvements]."  On February 20, 2008, Plaintiff filed a motion to

compel responses to the requests.  [Doc. No. 58].

On March 10, 2008, the Magistrate Judge granted in part and denied in part the motion to

compel.  [Doc. No. 63].  The Magistrate Judge ordered Defendants to comply with many of

Plaintiff's discovery requests, but denied the requests for bank information because

"[D]efendants contend . . . that they have provided or otherwise made available all of the

requested information." Similarly, the Magistrate Judge denied all of Plaintiff's requests for answers to the entire second set of discovery requests as moot because Defendants claimed they had answered all of those requests on February 29, 2008. [Doc. No. 63]. The Magistrate Judge emphasized that Plaintiff could re-urge the motion if Defendants' February 29th responses were incomplete, or if they presented evidence that Defendants had not in fact produced the bank account information.

Plaintiff filed a second motion to compel on April 2, 2008. [Doc. No. 64]. Plaintiff alleged that, notwithstanding Defendants' earlier assertions, the bank information provided by Defendants was non-responsive. Plaintiff also alleged that Defendants were in contempt of the Magistrate Judge's previous order and that the February 29th responses to the second set of discovery requests were inadequate because Defendants failed to disclose when they completed each of the projects in the List of Improvements and failed to provide documentation supporting the amounts spent on those projects. As was later revealed, Defendants, instead of producing supporting invoices for each of the projects, produced two boxes of receipts, invoices, and random papers without Bates stamps and without any way to reliably identify which documents were associated with each facility and project. Many of the papers that were in the boxes related to facilities not even implicated in the case.

The Magistrate Judge held an evidentiary hearing before ruling on Plaintiff's second motion to compel. At the hearing, Defendants did not dispute that they had failed to provide the requested information about the bank accounts, or that the information was discoverable. Rather, they indicated that they would be willing to produce the information if the Court entered a protective order. Defendants further argued that it was too burdensome to specifically identify which invoices related to each of the projects in the List of Improvements. The Magistrate Judge

rejected Defendants' argument.

On May 1, 2008, the Magistrate Judge ordered Defendants to state the date that the projects in the List of Improvements were completed and to "specifically identify the invoices, receipts, and other documents related to each . . . improvement project." Defendants were given thirty days, until June 1, 2008, to comply, and only had to produce invoices and documentation for expenditures over $250.00. In addition, the Magistrate Judge ordered the parties to file the requested protective order jointly. The Magistrate Judge declined to issue sanctions for Defendants' conduct, but warned Defendants that sanctions would follow should Defendants fail to comply with the order or cooperate with the discovery process. The Magistrate Judge's order was not appealed, and a jointly approved protective order was filed shortly after the May 1, 2008, Order issued.

However, Defendants failed to comply with the Magistrate Judge's May 1, 2008 Order and provide the requested information by June 1st. About a week later, on June 6, 2008, Defendants filed an untimely motion for extension of time, requesting forty-five more days, until July 15, 2008, to comply. On July 1, 2008, the Magistrate Judge denied the motion for extension. On July 3, 2008, three days after being denied an extension, and more than a month after the deadline set by the Magistrate Judge had passed, Defendants finally mailed some invoices to Plaintiff.

Plaintiff now argues that the July 3rd documents were non-responsive, that Defendants have not informed Plaintiff when the alleged projects were completed, and that Defendants still have not responded to its requests for bank account information. Accordingly, Plaintiff moves the Court, under Federal Rule of Civil Procedure 37(b)(2) and (c), to enter an order preventing Defendants from presenting evidence at trial related to the improvements in the List of

Improvements, including expenditures and any financial hardship. Plaintiff further moves the

Court to draw a negative inference as to what the withheld evidence would have demonstrated.

## II.    LAW AND ANALYSIS

Rule 37 of the Federal Rules of Civil Procedure allows courts to sanction parties that fail

to respond or participate in discovery. Courts have broad discretion to sanction a party under

Rule 37. Topalian v. Ehrman, 3 F.3d 931, 934 (5th Cir. 1993).

When a party fails to respond to a discovery request, the requesting party may move to

compel a response. FED. R. CIV. P. 37(a)(3)(B). Evasive and incomplete disclosures, answers, or

responses are treated the same as no response at all. FED. R. CIV. P. 37(a)(4). If a party fails to

obey an order to provide or permit discovery, the court in which the action is pending may issue

sanctions. FED. R. CIV. P. 37(b)(2). These sanctions may include an order prohibiting the

disobedient party from introducing designated matters into evidence. FED. R. CIV. P.

37(b)(2)(A)(ii). The Court may also direct that matters embraced within the order be taken as

established as the prevailing party claims. FED. R. CIV. P. 37(2)(A)(i).

Under Rule 26(e)(1) a party that has responded to a discovery request must supplement its

response in a timely manner if it learns that its response was materially incomplete or incorrect.

FED. R. CIV. P. 37 (c). A party that fails to update materially incomplete or incorrect discovery

may be sanctioned unless the failure was substantially justified or harmless. FED. R. CIV. P. 37

(c)(1)(C). Like sanctions under Rule 37(b)(2), these sanctions may include an order prohibiting a

party from introducing designated matters into evidence or an order designating facts to be

established as the prevailing party claims. FED. R. CIV. P. 37(c)(1)(C).

Since December of last year, Plaintiff has justifiably requested invoices and other

documentation to support Defendants' claim that they spent more than $2.4 million dollars on

improvements.  Plaintiff also requested financial information so that it can determine whether

Defendant Pruett observed the necessary corporate formalities in order to be shielded from

personal liability.  Defendants claim that the amounts of the various improvements were

calculated by examining invoices from Defendant LWC Management Co., Inc., to Defendant

Louisiana Land and Water.  Both companies are owned by Defendant Pruett.  Plaintiff, noting

that Defendant Pruett is effectively paying himself for the alleged improvements and then

obtaining reimbursement from the State, seeks proof that the work was actually done and that the

cost of the work claimed by Defendants is accurate.  As the Magistrate Judge stated in

connection with ordering production of the documents, "plaintiff[] [is] interested in finding out . .

. whether the work that the defendants say has been done on each of these facilities, in fact, has

been done."  [Doc. No. 89, Exh. A. at p. 24].

It is undisputed that Defendants failed to comply with the Magistrate Judge's May 1,

2008 Order.  In fact, it was not until July 3, 2008 more than a month after the court-imposed

deadline, that Defendants finally mailed Plaintiff some invoices and other documents, which,

according to the undisputed description by Plaintiff, are wholly inadequate, disorganized, and, in

many cases, illegible.  Specifically, according to Plaintiff, the July 3rd documents are mostly a

stack of poorly photocopied invoices and receipts, with only half of the invoices assigned to

facilities in the instant lawsuit.  Many invoices are not linked to a particular facility, let alone a

particular project at a facility.  Many of the photocopies are illegible, incomplete, or for petty

expenses of less than $100.  Multi-page invoices have been separated, and many invoices are

included multiple times for the same facility.

Rather than dispute Plaintiff's description of the untimely and inadequate disclosures,

Defendants have generally alleged that "if Plaintiff felt [their] responses were insufficient,

Plaintiff should have petitioned th[e] Court for another hearing and not for sanctions." [Doc. No. 89]. Defendants' argument is unpersuasive. Plaintiff has twice sought a court order to compel Defendants to reply to discovery responses. The Magistrate Judge's first order denied Plaintiff's motion in part based on Defendants' assurances that the appropriate evidence had been produced. Only after a hearing on Plaintiff's second motion to compel did the Magistrate Judge discover that Defendants' alleged responses were inadequate or non-existent. Although she could have done so, the Magistrate Judge declined to issue sanctions, but warned that sanctions would be imposed if any future violation occurred.

Defendants' failure to comply with their discovery duties and the Magistrate Judge's May 1, 2008 Order has significantly prejudiced Plaintiff. While Plaintiff was attempting to get Defendants to provide the relevant discovery and comply with the Magistrate Judge's Order, Plaintiff conducted depositions without the requested discovery. Defendants' expert relied on information provided in the List of Improvements, but Plaintiff was limited in its ability to question him at his deposition. Defendants' non-compliance with their discovery duties and the Magistrate Judge's order will also hinder Plaintiff at trial in refuting testimony about the purported improvements.

In addition, Defendants have been uncooperative in answering Plaintiff's requests for clearly relevant and discoverable financial information. Plaintiff sent its requests for bank account information to Defendants on November 19, 2007, almost nine months ago. Despite earlier claims that the information had been provided, and notwithstanding a protective order to facilitate disclosure, Defendants have yet to produce responsive documents.

Defendants have also provided evasive or non-responsive answers to non-financial discovery requests. At the hearing on the second motion to compel, the Magistrate Judge had to

address several problems with Defendants' inadequate responses to discovery. For example, Defendants evaded explaining their procedure for collecting water samples and other measurements at their facilities, and the Magistrate Judge had to order a response to the relevant interrogatories.

Defendants also have no substantial justification for their actions. Defendants have argued that sanctions should not be imposed because it was too onerous to comply with the Defendants' discovery requests and the Magistrate Judge's order. The Court disagrees. Plaintiff sent requests for invoices to Defendants over seven months ago. The Magistrate Judge's order gave the Defendants thirty days to comply. Defendants have had more than enough time to answer Plaintiff's discovery requests.

Furthermore, Defendant Pruett's repeated insistence that it was too burdensome to comply with the Magistrate Judge's order is belied by his own testimony at the hearing on the second motion to compel. At the hearing, Pruett testified that when Defendant LWC performed a capital improvement project for Defendant Louisiana Land and Water, it provided invoices and documentation supporting the improvement project. [Doc. No. 89, Exh. A. at p. 30]. Simply put, Defendants claim they had previously assembled the information requested by Plaintiff. Although Defendant Pruett testified that he had since disassembled the invoices provided by LWC Management and spread them throughout various files, the relevant information allegedly remained in Defendants' possession. In addition, Defendants have not explained how they were able to put together their demonstrative exhibit, listing the improvements they allegedly made and the amounts paid for those improvements, without referring to the original work orders and invoices.

Finally, the Magistrate Judge gave Defendants opportunities to limit the scope of

Plaintiff's requests, specifically asking at the hearing how she could limit the discovery requests to make them less burdensome on Defendants. Even though Defendants did not offer any suggestions, the Magistrate Judge on her own initiative concluded that Defendants did not need to produce invoices of amounts less than $250.00.

Defendants argue that even if they failed to comply with a court order, they should not be sanctioned because they were simultaneously under pressure to respond to several requests for documents from the EPA, the Louisiana Public Service Commission, and the Department of Justice. Defendants' argument is unpersuasive.

Most of the other organizations are seeking similar, if not the same, information that Defendants were ordered to provide in this case, and therefore making additional copies of the same documents would not have presented much, if any, additional burden. In this case Plaintiff has sought invoices and other documents to establish that LWC made the more than $2.4 million dollars in improvements that were billed to Louisiana Land and Water. The Louisiana Public Service Commission has made several similar inquiries about the payments that Defendant Louisiana Land and Water made to Defendant LWC. [Doc. No. 89, Exh. D-1]. For example, the Louisiana Public Service Commission asked for "any and all documentation in [Louisiana Land and Water's] possession, custody or control that supports the reasonableness of expenses charged by . . . LWC and any other affiliate that charges costs to [Louisiana Land and Water]." See, [Doc. No. 89, Exh. D-1, at ¶ 36]. In a related request, the LPSC asked for "the timesheets and/or other time records, for each person employed by an affiliated company that charges costs to [Louisiana Land and Water]." See, [Doc. No. 89, Exh. D-1, at ¶ 39].

Finally, although the Court has considered alternatives, evidentiary sanctions are appropriate in this case. First, this is not a situation where the uncooperative party was not

9

warned or provided an opportunity to explain its inability to comply. Second, this is also not a case where the requested evidence is easily attainable from another source. And finally, this is not a situation where monetary sanctions are an adequate substitute for the requested evidentiary sanctions. With discovery having been completed and the trial a few weeks away, monetary sanctions would do little to remedy the prejudice that Plaintiff has suffered. Defendants have repeatedly claimed that they have made more than $2.4 million dollars in improvements to the facilities in this case, but have not provided the requested invoices in support of these improvements or even informed Plaintiff when these improvements were made.

## III. CONCLUSION

For these reasons, Plaintiff's Motion in Limine for Evidentiary Sanctions [Doc. No. 86] is **GRANTED**. Therefore,

1. Defendants may not rely upon their alleged improvements to the facilities to mitigate against any penalty that they might be assessed at trial.

2. In addition, in light of Defendants' failure to provide their financial records, the Court will presume at trial that those records would be adverse to Defendants' position.

Monroe, Louisiana, this 14th day of August, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE