UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK | CIVIL ACTION NO. 07-0595 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LWC MANAGEMENT CO. INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is Plaintiff Louisiana Environmental Action Network's ("LEAN") Second Motion for Contempt and to Enforce the Consent Decree ("Second Motion for Contempt") [Doc. No. 158] against Defendants Jeffery Pruett ("Pruett"), LWC Management Co., Inc. ("LWC"), Louisiana Land & Water Co., Inc., UDS Management Corp., Bayou Utilities, Inc., and Utility Data Service Corp.[1]

After the parties completed briefing, the Court held a hearing on the Second Motion for Contempt on May 21, 2012. The Court then took the motion under advisement. For the following reasons, LEAN's Second Motion for Contempt is GRANTED IN PART and DENIED IN PART.

I. FACTUAL AND PROCEDURAL HISTORY

This case arose under the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.* Section 1365 of the CWA provides for enforcement of discharge limitations through civil suits by concerned citizens. On March 30, 2007, LEAN filed a Complaint against Defendants alleging that they committed numerous violations of their Louisiana Pollutant Discharge Elimination System

---

[1]All Defendants except Bayou Utilities, Inc., and Utility Data Service Corp. were named in the original Complaint. The remaining two Defendants were added in an Amended Complaint on September 19, 2007. [Doc. No. 46].

("LPDES") permits, resulting in the discharge of inadequately treated human waste effluent and other health concerns, and that they operated several facilities without valid LPDES permits. LEAN sought declaratory and injunctive relief, civil penalties, and attorney's fees and costs.

On August 21, 2007, the Court granted LEAN's Motion for Partial Summary Judgment on liability, finding that Defendants violated the CWA by operating a sewage facility for the Tanglewood Subdivision without a permit and were liable for discharging pollutants for 889 days. [Doc. Nos. 36 & 37].

After extensive discovery, on May 9, 2008, LEAN filed a Second Motion for Partial Summary Judgment [Doc. No. 78]. On August 11, 2008, the Court denied the Second Motion for Partial Summary Judgment, but noted that there are no genuine issues of material fact that (1) Defendants discharged pollutants in excess of the limits in the LPDES permits, (2) Defendants received actual notice of the alleged violations and had the opportunity to bring the facilities into compliance, and (3) Defendants did not timely file Discharge Monitoring Reports. [Doc. No. 101]. The Court explained that the primary issue remaining for trial was LEAN's constitutional standing.

On August 14, 2008, Magistrate Judge Hayes conducted a settlement conference with the parties, who reached agreement. The terms of settlement were recorded in open court. [Doc. No. 107]. As a result of this settlement, on August 18, 2008, the Court issued an order of dismissal, requiring that the parties submit a joint stipulation of dismissal within 60 days. However, the parties did not meet this deadline because they required a status conference with Magistrate Judge Hayes to resolve a controversy about the settlement language. [Doc. No. 114].

After multiple extensions of time, the parties finally submitted a Joint Motion for Consent Judgment [Doc. No. 124] on February 23, 2009. On February 25, 2009, the Court entered a Consent

Decree. [Doc. No. 128]. In lieu of paying large civil penalties, Defendants have two primary obligations under the Consent Decree. First, under Section VI, entitled "Remedial Measures," Defendants were required to retain an independent expert who would oversee repairs to Defendants' wastewater treatment facilities to bring them into compliance with the CWA and who would provide quarterly progress reports to the parties.

Second, under Section VII, entitled "Supplemental Environmental Projects" ("SEPs"), Defendants agreed to pay up to $340,000 to complete the SEPs, which included the inspection and repair of private sanitary sewer lateral connections of the customers serviced by Defendants' facilities. *Id*. at ¶ 22. The SEPs were to be completed under the supervision of the independent expert addressed in Section VI by October 1, 2011.[2] *Id*. at ¶ 7-16.

On August 5, 2009, LEAN filed a Motion for Status Report [Doc. No. 130], asserting that Defendants had not begun the process of retaining an independent expert. The Court granted the motion, ordering the parties to submit to a status conference before Magistrate Judge Hayes. [Doc. No. 133].

On August 18, 2009, Magistrate Judge Hayes conducted a status conference with the parties. [Doc. No. 134]. During the conference, Pruett stated that Defendants were negotiating the sale of their companies and that negotiations should be finalized before October 1, 2009. *Id*. Thus, Magistrate Judge Hayes ordered the parties to file status reports by October 1, 2009. *Id*.

On October 1, 2009, LEAN and Defendants filed separate status reports. [Doc. Nos. 136 & 137]. LEAN stated that it had proposed an independent expert, Clay Bowers ("Bowers"), but that

---

[2]The Consent Decree also had provisions relating to the potential sale of Defendants' facilities to United Water in several places, but those provisions are now irrelevant since the sale did not take place.

Defendants had not agreed to the proposed independent expert or proposed an independent expert of their own. [Doc. No. 136]. Defendants stated that they anticipated a sale of their companies to be finalized in November 2009. [Doc. No. 137].

On October 19, 2009, Magistrate Judge Hayes issued an Order [Doc. No. 138] stating that "[i]f the sale of defendants' facilities is not finalized by 11/16/09, then defendants shall notify plaintiff, whether proposed independent expert, [Bowers], is acceptable or provide the name of their own proposed independent expert."

On November 13, 2009, Defendants filed a Report to the Magistrate [Doc. No. 139]. Defendants indicated that the sale of their companies would not be finalized by November 16, 2009, and agreed with LEAN that Bowers would serve as the independent expert. *Id*. However, Defendants requested that the parties delay appointing Bowers as the independent expert until December 30, 2009, so that Defendants could attempt to sell their companies by that date. *Id*.

On November 16, 2009, LEAN filed a Second Motion for Status Conference. [Doc. No. 140] for the purpose of discussing how the parties should proceed with the retention or appointment of Bowers. *Id*. Magistrate Judge Hayes granted the motion and ordered the parties to submit to a status conference on December 9, 2009. [Doc. No. 141].

On November 30, 2009, LEAN filed a Motion to Continue Status Conference. [Doc. No. 142]. LEAN indicated that Bowers was no longer available as an independent expert, and the parties were attempting to find a new mutually agreeable independent expert. *Id*. Magistrate Judge Hayes granted the Motion and ordered the parties to participate in a status conference on January 5, 2010.

On January 5, 2010, Magistrate Judge Hayes held the status conference. [Doc. No. 144]. The parties informed Magistrate Judge Hayes that they had agreed that Dean Dick Engineering, Inc.

("Dean Dick Engineering") would serve as the independent expert. *Id*. The minutes of the status conference state: **"The parties have agreed on an expert. He is to begin work this month."** *Id*. (emphasis added).

On February 1, 2010, Dean Dick Engineering sent a proposed contract to counsel for Defendants, Kai Midboe ("Midboe"). Midboe allegedly "forgot" about the proposed contract until February 24, 2010, when counsel for LEAN phoned him to ask about the status. Midboe immediately emailed the proposed contract to Pruett. *See* [Doc. No. 148, Exhibit C].

On April 1, 2010, LEAN filed a Motion to Enforce Consent Decree and for Sanctions. [Doc. No. 146]. Defendants filed a Response [Doc. No. 148], and LEAN filed a Reply. [Doc. No. 151].

On May 6, 2010, the Court issued a Ruling [Doc. No. 152] denying LEAN's Motion to Enforce Consent Decree and for Sanctions. The Court found that Defendants were not in contempt or in violation of the Consent Decree based on their delay in retaining an independent expert because (1) the Court had given Defendants multiple extensions of time to sell their facilities, and, therefore, extensions of time to begin the process of retaining an independent expert, *see* [Doc. Nos. 134, 138, 143]; (2) the parties had agreed in November 2009 to allow Bowers to serve as the independent expert, but, through no fault of Defendants, Bowers became unavailable later that month, *see* [Doc. Nos. 139 & 142]; and (3) Defendants were in the process of negotiating a contract to retain Dean Dick Engineering as the independent expert. At that time, the Court required Defendants to complete a contract with Dean Dick Engineering by May 21, 2010, so that a work schedule could be provided to the parties by June 21, 2010. As long as Defendants complied with the deadlines in the work schedule, the Court found that Defendants would have adequate time to finish the SEPs by the October 1, 2011 deadline dictated by the Consent Decree. Although the Court denied LEAN's

motion, it reserved LEAN's right to re-urge the motion if Defendants failed to comply with any of the deadlines set in the Consent Decree or failed to meet any deadlines imposed by the Court or in the work schedule created by Dean Dick Engineering.

On May 21, 2010, Dean Dick Engineering was retained as the expert. Mr. Dick created a work schedule, and work began in August 2010.

During this time, there was no activity in the docket until May 2, 2011, when Defendants' counsel Midboe and Stephanie Laborde moved to withdraw. Their motion was granted by Magistrate Judge Hayes on May 3, 2011. [Doc. No. 155]. Pursuant to counsel's motion, Magistrate Judge Hayes later issued an amended order [Doc. No. 157] to clarify that both the individual attorneys and the law firms of McGlinchey Stafford, L.L.P., and Milling Benson Woodward, L.L.P., were removed as counsel of record.

On March 4, 2012, LEAN filed the pending Second Motion for Contempt [Doc. No. 158]. On April 27, 2012, Defendants filed an Opposition to Motion for Contempt ("Opposition") [Doc. No. 162]. On May 11, 2012, LEAN filed a Reply Memorandum and Request for Further Relief Related to Plaintiff's Second Motion for Contempt ("Reply") [Doc. No. 163].

A hearing was held on the motion on May 21, 2012. At that time, LEAN presented testimony from Mr. Dick, and Defendants presented testimony from LWC's operations manager, Mike Risinger ("Risinger").

## II.  PENDING MOTION

In the instant motion, LEAN alleges that Defendants are in contempt and have violated Section VII of the Consent Decree by failing to meet the October 2011 deadline for completion of the SEPs. As an attachment to the motion, LEAN provided the declaration of Mr. Dick, who

declared that only 54 of the 146 private sanitary sewer lateral connection lines identified for inspection on in his report have been inspected, and most of the 54 lines have received a necessary service or repair. Had Defendants complied with the work schedule he created, Mr. Dick declares that the inspections and repairs would have been completed by the October 2011 deadline.

In addition to Defendants' failure to complete the SEPs, LEAN contends that the "main work" contemplated in Section VI of the Consent Decree, the repairs of the facilities to bring them into compliance with the CWA, has not begun because Defendants have prolonged the proceedings with multiple promises of a sale. During one of the sale negotiations in 2009, there was an assessment which indicated that $4,680,000 in repairs were needed to bring the facilities at issue in this lawsuit into compliance with the CWA. Given the problems that resulted in the filing of the Second Motion for Contempt, however, Mr. Dick is hesitant to obtain bids for the repair work.

In his declaration and during the hearing, Mr. Dick explained that he originally dealt with Pruett about the SEPs, but after Pruett's incarceration for criminal violations of the CWA, he began dealing with Pruett's father, John Pruett.[3] Prior to the filing of this motion, in November 2011, Mr. Dick met with John Pruett and gave him a copy of the Consent Decree, but John Pruett refused to undertake any more work.[4] Since November 2011, Mr. Dick confirms that LWC has "failed to perform the lateral work" and "refused to return calls." Until February 27, 2011, Defendants had failed to pay his outstanding invoices of $3,444.

---

[3]On June 15 2011, after having been convicted at trial of criminal violations of the CWA, Defendants Pruett, LWC, and Louisiana Land & Water Co. were sentenced. *See USA v. Pruett, et al.*, Crim. A. No. 09-00112-01-03 (W.D. La.). Pruett was ordered to report to a Bureau of Prisons facility on July 18, 2011, to begin serving a total term of 21 months imprisonment.

[4]John Pruett did not testify.

Finally, LEAN contends that Defendants have taken advantage of the fact that it cannot pursue any CWA violations against Defendants as a result of the Consent Decree. As a result of Defendants' failure to complete the identified SEPs and the necessary repair work, LEAN contends that the subdivisions serviced by their facilities have continued to have problems.

In their Opposition, Defendants move to strike LEAN's Second Motion for Contempt under Federal Rule of Civil Procedure 8, contending that LEAN did not include a "short and plain statement of the claim showing that the pleader is entitled to relief." [Doc. No. 162, p. 1]. Defendants admit that they failed to complete the SEPs by the October 2011 deadline, but contend that they have "undertaken to comply with each obligation of the consent decree." *Id.* They point out that they have paid Dean Dick Engineering and that the payment cleared on February 27, 2012, prior to Mr. Dick's signing of the declaration. As in other prior pleadings before the Court, Defendants raise the "deplorable" condition of the facilities when they were purchased and explain that much of the delay has been brought about by the prosecution and incarceration of Pruett. Even so, Defendants note that they have completed additional repairs since the Second Motion for Contempt was filed, so that 73 of the 146 inspections and any related repairs have been completed at this point. Defendants also respond to specific instances of violations discussed by LEAN in its Second Motion for Contempt and explain how the problems were resolved.

In addition to their response to the allegations in the Second Motion for Contempt, Defendants accuse LEAN of attempting to sabotage potential sales. Defendants contend that it is "delusional" to think that the customers of the water and sewer facilities could pay rates that would enable the owner to spend over $4,000,000, to repair the sewer systems and over $7,000,000 to repair all the systems. They point out that Louisiana law limits the amount of money that can be

invested in a utility system without approval of the Louisiana Public Service Commission ("LPSC") and that approval could not be obtained without the submission of plans and specifications to the Louisiana Department of Environmental Quality and the Department of Health and Human Services. If LEAN continues its demands, Defendants contend that they are never going to be able to sell the facilities. [Doc. No. 162, p. 10]. Defendants are again in the process of negotiating a sale to a potential buyer. According to Defendants, the prospective buyer intends to "close defendants' sewer lagoons as soon as [D]efendants' sewer facilities can be incorporated into the buyer's systems," and "if [D]efendants have not completed the lateral line repairs, the buyer will do so." *Id.*

On May 11, 2012, LEAN filed its Reply [Doc. No. 163]. LEAN points out that Defendants do not contest their lack of compliance with the Consent Decree, but make the same irrelevant arguments they have made in the past. LEAN specifically contests Defendants' argument regarding limitations for investment in a utility, attaching a 2008 letter from the LPSC, which states that Defendants could be forced to make the payments, but they could not recoup the payments from their customers. Finally, LEAN requests that the Court clarify the ability of the parties to communicate with Mr. Dick because Defendants' counsel has filed a complaint with the Office of the Disciplinary Counsel regarding LEAN's counsel's communications with Mr. Dick.

### III. LAW AND ANALYSIS

#### A. Preliminary Issues

##### 1. Rule 4.2 of the Rules of Professional Conduct

First, as a preliminary matter, the Court will address LEAN's concerns about contact with Dean Dick. After an in-Chambers conference, it is the Court's understanding that Defendants were concerned that LEAN's counsel had directed Dean Dick to forward an email to or otherwise advise

Defendants. However, counsel for Defendants candidly admitted that he did not know if LEAN's counsel or Mr. Dick was aware that his clients had retained counsel. He further admitted that he now believes that the communication was simply an error on Mr. Dick's part and was not directed by LEAN's counsel.

>Rule 4.2 of the Rule of Professional Conduct provides:
>
>Unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a lawyer in representing a client shall not communicate about the subject of the representation with:
>
>(a) a person the lawyer knows to be represented by another lawyer in the matter; or
>
>(b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and
>
>>(1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter;
>>
>>(2) who has the authority to obligate the organization with respect to the matter; or
>>
>>(3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

In this case, there is no evidence that LEAN's counsel knew that Defendants were represented (since their previous counsel had withdrawn), there was no evidence that LEAN's counsel intended for Mr. Dick to convey his email to Defendants, and there was no evidence that Mr. Dick himself intended to forward the email from LEAN's counsel.[5] Of course, the Court has no authority or jurisdiction to consider a complaint to the Office of the Disciplinary Counsel, but LEAN's counsel was and is

---

[5] During his testimony at the hearing, Mr. Dick explained that he did not realize that he was forwarding the email from LEAN's counsel. He believed that he was communicating directly with Defendants.

clearly entitled under paragraph 9 of Section VI of the Consent Decree[6] to speak with the independent expert, Mr. Dick, as well as offer his opinion to Mr. Dick of the requirements of the Consent Decree. Defendants, through their counsel, may do the same.

### 2. Rule 8

Second, Defendants have moved to strike the Second Motion for Contempt for failure to comply with Rule 8, which provides:

> A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a).

LEAN's Second Motion for Contempt meets all of these requirements. "[D]istrict courts have wide discretion to enforce decrees and to implement remedies for decree violations," *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008), and LEAN has identified the February 2009 Consent Decree as the basis of the Court's jurisdiction. LEAN has further identified Defendants' failure to comply with the enforceable Consent Decree and has stated the relief it demands. Thus, Defendants' Motion to Strike, contained in its Opposition [Doc. No. 162], is DENIED.

---

[6]Paragraph 9 states: "The independent expert will be equally accessible to all parties, and the contract with the independent expert will specify that the independent expert will provide full communication and information to all parties regarding the subject matter of this consent decree and compliance with the terms specified in paragraph 8." [Doc. No. 128].

### B. Defendants' Contempt and Violation of the Consent Decree

"To establish civil contempt, the moving party bears the burden of proving by 'clear and convincing' evidence that the alleged contemnor was aware of and violated a 'definite and specific order requiring him to perform or refrain from performing a particular act or acts.'" *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 398 (5th Cir. 2004) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995). Clear and convincing evidence is evidence sufficient to produce a "'firm belief or conviction as to the truth of the allegations sought to be established . . . .'" *In re Medrano*, 956 F.2d 101, 102 (5th Cir.1992) (quoting *Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 285 (1990)).

Since Defendants have not sold their facilities, they were obligated under the Consent Decree to complete SEP work under the instruction of an independent expert by October 1, 2011. Further, in the Court's May 6, 2010 Order, Defendants were required to "comply with and meet the deadlines imposed by the work schedule created by Dean Dick [Engineering]." [Doc. No. 153]. It is clear from Mr. Dick's undisputed testimony that Defendants also failed to comply with the work schedule deadlines. Since Defendants, by their own admission, have not completed the SEP work and since they also failed to comply with the work schedule, the Court finds that Defendants are in violation of the Consent Decree.

### C. Remedies for Contempt and for Violating the Consent Decree

Once a party has established contempt under a consent decree, a district court has broad discretion to fashion appropriate remedies to effectuate the decree. *Test Masters Educ. Serv's, Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)). "These remedies need not match those requested by a party or originally

provided by the court's earlier judgment." *Alcoa*, 533 F.3d. at 288 (citations omitted); *see also Test Masters*, 428 F.3d at 578-79 (approving a district court's injunction that went beyond the terms of the court's earlier order because the subsequent injunction was necessary to enforce the prior order).

The Court has found that Defendants have violated the Consent Decree and must now impose an appropriate compensatory remedy. LEAN requests that the Court "order Defendants to pay the balance of the SEP funds (the balance of $340,000) due under Section VII of the Consent Decree **and** the amount required to repair their broken facilities under Section VI of the Consent Decree." [Doc. No. 158, p. 8]. Because of its understanding of the needs of the member communities, its obligation and accountability to the member communities, its familiarity with Defendants' facilities, and its established relationship with Dean Dick Engineering, LEAN further requests that the Court appoint it administrator of the repair program. Alternatively, LEAN states that the Court can order LEAN to designate another non-profit to administer the repair program.

As stated above, Defendants admit that they are in violation of the Consent Decree, but contend that they have attempted to comply with their obligations. They presented testimony from LWC's Operation Manager, Risinger, a mechanical engineer who has served as a maintenance engineer for paper mills and who has experience doing the type of work required by the Consent Decree. He testified that he has only been involved since early 2011 and that he was unaware of the work schedule until July or August 2011. When Pruett became incarcerated, Risinger was told that he did not have to perform any further work, but Mr. Dick informed him that the work had to continue.

Risinger explained the steps Defendants have taken to meet their obligations since that time and his intent to continue with their SEP work. He estimated that the SEP work would be completed

in the next ninety (90) days. Risinger was not involved in any financial decisions, but was told by Janice Pruett that there was a $5,000 cap per month on work to be performed.

The lengthy procedural history of this case details years of delays, all of which are attributable to Defendants. Regardless of the state of the facilities at the time of Defendants' purchase and the fact that Pruett is incarcerated for his criminal CWA violations, the fact remains that Defendants voluntarily entered into a Consent Decree with LEAN, and they have failed to meet their obligations. The Court will, therefore, GRANT LEAN's Second Motion for Contempt in part and require Defendants to pay the balance of the $340,000 dedicated for SEP work to LEAN for completion of the repairs identified by Dean Dick Engineering.[7] The Court will further ORDER that LEAN will serve as administrator over the remaining SEP work. To the extent that LEAN asks that Defendants be required to pay for the repair work, the Court will deny the motion at this time, subject to re-urging at a later date.

### D.    Attorney's Fees and Costs.

Finally, LEAN has also moved the Court for attorney's fees and costs "associated with the years of effort required to enforce the Consent Decree entered in this case." [Doc. No. 158, p. 9].

Paragraph 23 of Section XI of the Consent Decree states: "Should [Plaintiff] or the Defendants be required to seek the Court's intervention to enforce compliance with this Consent Decree, the noncompliant party will pay the reasonable attorney's fees and costs necessary to enforce

---

[7]This remedy is compensatory in nature, not punitive. *See Shafer*, 376 F.3d at 398 (noting that a fine is compensatory if it is based on evidence of an uncompensated actual loss); *Port v. Heard*, 764 F.2d 423, 426 (5th Cir. 1985) ("If [a] contempt judgment is meant to secure compliance with some order of the court or to remedy some harm resulting from noncompliance, the contempt [judgment] is labeled civil." (citations omitted)). Since compensatory remedies are civil remedies, this remedy does not require the procedural protections associated with a criminal fine. *Shafer*, 376 F.3d at 398.

compliance." [Doc. No. 128, ¶ 23]. The Court will not impose attorney's fees and costs for the "years of effort," given the Court's determination that Defendants were not in violation of the Consent Decree previously. However, since the Court has found that Defendants have violated Section VII of the Consent Decree, an award of attorney's fees and costs for the filing and prosecuting the Second Motion for Contempt is appropriate. LEAN shall submit appropriate evidence of its attorney's fees and costs related to the filing and prosecution of the Second Motion for Contempt within fourteen (14) days of the date of this Ruling.

## IV. CONCLUSION

For the foregoing reasons, LEAN's Second Motion for Contempt [Doc. No. 158] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent that LEAN seeks a determination that Defendants have violated the Consent Decree, seeks payment of the balance of the funds for the SEPs to LEAN, and seeks to administer the remaining SEPs. The motion is DENIED to the extent that LEAN seeks a contempt determination and seeks payment of the funds necessary for the repair work.

The Court further grants LEAN's request for attorney's fees and costs under paragraph 23 of Section XI of the Consent Decree. LEAN shall file appropriate evidence of the attorney's fees and costs related to the filing and prosecution of the Second Motion for Contempt within fourteen (14) days of the date of this Ruling.

MONROE, LOUISIANA, this 8th day of June, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE